Laurence D. King (SBN 206423)
Linda M. Fong (SBN 124232)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Facsimile:   415-772-4707
Email: lking@kaplanfox.com
        lfong@kaplanfox.com
        mgeorge@kaplanfox.com
        mchoi@kaplanfox.com

Frederic S. Fox (*pro hac vice* to be filed)
Donald R. Hall (*pro hac vice* to be filed)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714
Email: ffox@kaplanfox.com

*Attorneys for Plaintiff COLLEEN GALLAGHER*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEEN GALLAGHER, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation,<br><br>      Defendant. | Case No. 15-CV-3952<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF:**<br><br>1. Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;<br>2. False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and<br>3. Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

1    Plaintiff Colleen Gallagher ("Plaintiff"), by and through her attorneys, individually and on

2    behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against

3    Defendant Chipotle Mexican Grill, Inc., a Delaware corporation ("Chipotle" or "Defendant"), and

4    makes the following allegations based upon knowledge as to herself and her own acts, and upon

5    information and belief as to all other matters, as follows:

6                                    **INTRODUCTION**

7    1.    This is a class action brought by Plaintiff individually and on behalf of all other

8    individuals similarly situated in California who purchased or paid for Chipotle food and beverage

9    products ("Food Products") marketed, advertised, and/or sold by Defendant during the period from

10   April 27, 2015 to the present (the "Class Period").

11   2.    Chipotle owns and operates a nationwide chain of casual Mexican fast-food

12   restaurants that sell four main menu items: burritos, burrito bowls (a burrito without the tortilla),

13   tacos, and salads.  Since 2009, Chipotle has marketed itself as serving "Food With Integrity," and

14   sets itself apart from other fast-food chain competitors by claiming to serve locally-sourced

15   produce, antibiotic and hormone free livestock raised in humane conditions, and produce farmed

16   using environmentally-friendly techniques.  Chipotle claims that "[w]ith every burrito we roll or

17   bowl we fill, we're working to cultivate a better world."

18   3.    Chipotle has carefully tailored its public image by marketing to healthy-lifestyle and

19   environmentally conscious consumers that it knows are willing to pay premium prices for its food

20   products because they align with the consumers' ethical eating choices.  As part of this public

21   image, beginning in 2013, Chipotle began listing its food ingredients on its website, indicating

22   whether an ingredient was organic, locally produced, had a preservative, or contained a genetically

23   modified organism ("GMO").

24   4.    The potential health impact of GMOs has been the subject of much scrutiny and

25   debate within the food and science industries, but Chipotle knows customers attach an unhealthy,

26   negative perception towards them.  Capitalizing on this perception, in April 2015, Chipotle took

27   the unprecedented step among fast-food restaurants by launching a multi-media publicity campaign

28   touting that it was the "first national company" in the food industry to serve a menu devoid of

GMOs.[1]   Chipotle has plastered its GMO-free message on television commercials, billboards, social media, store fronts, and in-store signage.  Chipotle represents to customers that, if they eat at Chipotle, they will not be eating GMOs.  Chipotle's marketing campaign has been a resounding success for the company, which saw a 100+ point jump in its stock price on the New York Stock Exchange in the four months since its public announcement.

5.      But as Chipotle told consumers it was "G-M-Over it," the opposite was true.  In fact, Chipotle's menu has never been at any time free of GMOs.  Among other things, Chipotle serves meat products that come from animals which feed on GMOs, including corn and soy.  Chipotle's tacos and burritos are also usually served with sour cream and cheese from dairy farms that feed animals with GMOs.  And, Chipotle also sells Coca-Cola and other soft drinks that are made with corn-syrup—a GMO.  While Chipotle knows that its menu contains ingredients with GMOs, it takes no meaningful steps to clarify consumer misconceptions in its advertisements and on its billboards, both in stores and in print, which instead say "all" of the ingredients used in its Food Products are "non-GMO".  A "Chipotle meal was, and remains, the very definition of a GMO meal…."[2]

6.      As a result of Chipotle's conduct, customers like Plaintiff Gallagher have been deceived into buying Chipotle's food, or paying more for Chipotle products than they would have otherwise paid.  Accordingly, Plaintiff brings a proposed class action against Chipotle arising from Chipotle's deceptive conduct that seeks damages, restitution and/or disgorgement of Chipotle's profits, injunctive and other equitable relief.

**PARTIES**

7.      Plaintiff Colleen Gallagher is a resident of Piedmont, California.  She purchased Chipotle's Food Products, relying on Defendant's "Food With Integrity" campaign and believing that its Food Products were a healthy alternative based on Chipotle's representations.  Plaintiff in

---

[1] *See Food With Integrity, G-M-Over It*, Chipotle, http://chipotle.com/gmo (last accessed Aug. 25, 2015).

[2] Jon Entine, *Chipotle's GMO Gimmick Turned Them Into The Public Face Of Science Illiteracy*, Science 2.0 (May 5, 2015, 7:30 AM), http://www.science20.com/jon_entine/chipotles_gmo_gimmick_turned_them_into_the_public_face_of_science_illiteracy-155328.

1   particular further relied on the representation that Defendant's Food Products did not contain any

2   GMO ingredients, having seen or heard advertisements, and in-store signage, that Chipotle used

3   "only non-GMO ingredients," in deciding to continue her purchases at Chipotle.  Plaintiff would

4   not have purchased from Defendant at the price she had paid, or purchased it at all, had she known

5   that the representations made concerning Defendant's Food Products were materially false and

6   misleading.

7           8.      Defendant Chipotle Mexican Grill, Inc., is a Delaware corporation headquartered in

8   Denver, Colorado.  Founded in 1993, Chipotle develops and operates fast-casual and fresh

9   Mexican food restaurants.  As of December 31, 2014, Chipotle has over 1,780 restaurants

10  throughout the United States, with 325 restaurants in California alone.  Chipotle has reported

11  revenues of $1.07 billion.

12  **JURISDICTION AND VENUE**

13          9.      This Court has jurisdiction over the subject matter of this action pursuant to

14  28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in

15  controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which

16  some members of the Class are citizens of different states than the Defendant.  *See* 28 U.S.C.

17  § 1332(d)(2)(A).  This Court has supplemental jurisdiction over the state law claims pursuant to

18  28 U.S.C. § 1367.

19         10.     This Court has personal jurisdiction over Defendant because Defendant is

20  authorized to do business and does conduct business in California, has specifically marketed,

21  advertised, and sold its Food Products in California, and has sufficient minimum contacts with this

22  state and/or sufficiently avail itself of the markets of this state through its promotion, sales, and

23  marketing within this state to render the exercise of jurisdiction by this Court permissible.

24         11.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendant does

25  business in this District, has intentionally availed itself of the laws and markets within this District

26  through the promotion, marketing, distribution and sale of its Food Products in this District, and a

27  significant portion of the facts and circumstances giving rise to Plaintiff's Complaint occurred in or

28  emanated from this District.

12.     Pursuant to Civil L.R. 3-2(c), an intra-district assignment to the San Francisco/Oakland Division is appropriate because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in this Division, including that Plaintiff purchased Food Products from a Chipotle restaurant in Alameda County.

<u>**FACTUAL ALLEGATIONS**</u>

**I.      <u>Genetically Modified Organisms</u>**

13.     For over 14,000 years, humans have domesticated plants, such as wheat and maize, and animals, including cattle, dogs, and sheep, to develop desired genetic traits through a process of selective breeding (also known as artificial selection).[3]   Selective breeding differs from traditional breeding, which involves the exchange of large, unregulated chunks of their genomes and can lead to unpredictable and unwanted traits in the offspring.   However, selective breeding takes time and may require multiple generations of crossing genes to produce the desired genetic trait (such as bigger, better tasting corn kernels).[4]

14.     With advances in technology, new techniques have been applied in the laboratory that obtain faster results in getting desired genetic traits.   Now, genes that express a desired trait can be physically moved or added to a new organism to enhance the trait in that organism.[5]   Also known as genetic engineering or genetic modification,[6] this technique allows new traits to be introduced one at a time without unwanted complications from extra genes and extensive crossbreeding.[7]   A GMO, also known as a transgenic organism, is the term used for any organism whose genetic material has been altered using these genetic engineering techniques.

---

[3] *See Genetically modified organism*, Wikipedia, https://en.wikipedia.org/wiki/Genetically_modified_organism (last accessed Aug. 7, 2015).

[4] *See Genetically Modified Organisms (GMO)*, University of California San Diego, http://www.bt.ucsd.edu/gmo.html (last accessed Aug. 7, 2015).

[5] *Id.*

[6] *See GMO Education*, Institute for Responsible Technology, http://www.responsibletechnology.org/gmo-education (last accessed Aug. 7, 2015).

[7] http://www.bt.ucsd.edu/gmo.html.

1    15.    Today, GMOs are used in biological and medical research, production of

2    pharmaceutical drugs, experimental medicine, and agriculture.[8]  Genetically modified crops are

3    engineered to, among other things, resist certain pests, diseases, or environmental conditions,

4    reduce spoilage, increase size and yield, taste and look better, and resist chemical treatments.  As of

5    2010, 10% of the world's croplands are planted with genetically modified crops.[9]  In the United

6    States, as of 2015, 94% of the planted area of soybeans, 95% of cotton, and 92% of corn were

7    genetically modified varieties.[10]  Other common genetically modified crops include alfalfa, canola,

8    papaya, sugar beets, zucchini, and yellow summer squash.[11]

9    16.    Since 1996, farmers in animal agriculture (including poultry) have optimized GMOs

10   by feeding genetically modified grains (corn) and oilseeds (soybean) to their flocks and herds.[12]

11   Because more than 80% of the corn and soybeans in the United States are raised from genetically

12   modified seeds, almost all corn and soybean used in conventional livestock and poultry feed is

13   genetically modified.[13]  In addition, other genetically modified crops such as cotton, canola, sugar

14   beets, and alfalfa are commonly used in animal feed.[14]  Consequently, most meat and dairy

15   products contain GMOs due to the feed consumed by livestock and poultry.

16   17.    While the safety or health impact of food and other goods derived from genetically

17   modified crops has been and continues to be hotly debated,[15] according to a January 29, 2015 Pew

---

[8] https://en.wikipedia.org/wiki/Genetically_modified_organism.

[9] *Id.*

[10] *Adoption of Genetically Engineered Crops in the U.S.*, United States Department of Agriculture Economic Research Service (July 9, 2015), http://www.ers.usda.gov/data-products/adoption-of-genetically-engineered-crops-in-the-us.aspx.

[11] *See What is GMO? Agricultural Crops That Have a Risk of Being GMO*, Non-GMO Project, http://www.nongmoproject.org/learn-more/what-is-gmo/ (last accessed Aug. 7, 2015).

[12] *See Genetically Modified Organism (GMO) Use in the Chicken Industry*, National Chicken Council (July 5, 2013), http://www.nationalchickencouncil.org/genetically-modified-organism-gmo-use-in-the-chicken-industry/.

[13] *Id.*

[14] *See* Ryan Beville, *How Pervasive are GMOs in Animal Feed?*, GMO Inside Blog (July 16, 2013), http://gmoinside.org/gmos-in-animal-feed/.

[15] *Compare, e.g.*, European Commission, *A Decade of EU-funded GMO Research (2001-2010)*, http://ec.europa.eu/research/biosociety/pdf/a_decade_of_eu-funded_gmo_research.pdf (last accessed Aug. 7, 2015) ("The main conclusion to be drawn from the efforts of more than 130 research projects, covering a period of more than 25 years of research, and involving more than

---

Research Center survey, only 37% of the general public believes that "it is generally safe to eat genetically modified (GM) foods."[16]

18.     Because the safety (or benefit) of eating genetically modified foods has been questioned, and the perception that GMOs are unnatural and harm the environment has persisted, consumers who are health and environmentally conscious have sought products that are non-GMO. As a result, companies have created a $5 billion (and fast growing) market for products without GMOs[17] and consumers are willing to pay the higher costs associated with non-GMO products due to the negative perception of genetically modified foods and because GMO-free ingredients are often more expensive.[18]

## II.    Chipotle's Advertising and Marketing

### A.     Chipotle's "Food With Integrity" Campaign

19.     Since 2009, Chipotle has marketed, sold, and prided itself on serving "Food With Integrity,"[19] promoting its brand and Food Products as a leader in healthier food and ethical farming practices.  In addition to print, outdoor, transit and radio ads, Chipotle conducts online advertising and strategic promotions to demonstrate its "Food With Integrity" mission.  Chipotle's video and music programs, events and festivals such as its "Cultivate Festival," and digital, mobile, and social media campaigns (such as its three-minute "The Scarecrow" and two-minute "Back to the Start" Youtube.com campaigns) have permitted Chipotle to differentiate itself from other fast-food companies as the industry leader in being health and environmentally conscious.  In 2014 alone, Chipotle spent over $57 million in advertising and marketing costs in the United States.

---

500 independent research groups, is that biotechnology, and in particular GMOs, are not per se more risky than e.g. conventional plant breeding technologies."), *with GMO Facts*, Non GMO Project, http://www.nongmoproject.org/learn-more/ (last accessed Aug. 7, 2015) ("Meanwhile, a growing body of evidence connects GMOs with health problems, environmental damage and violation of farmers' and consumers' rights.").

[16] Cary Funk and Lee Rainie, *Public and Scientists' Views on Science and Society*, Pew Research Center (Jan. 29, 2015), http://www.pewinternet.org/files/2015/01/PI_ScienceandSociety_Report_012915.pdf.

[17] Mary Beth Schweigert, *GMO Free Comes at a Price*, Gluten-Free Living (Nov. 25, 2014), http://www.glutenfreeliving.com/gluten-free-lifestyle/non-gmo/gmo-free-comes-at-price/.

[18] *Id.*

[19] *See Day After Day, We're Committed*, Chipotle, http://chipotle.com/food-with-integrity (last accessed Aug. 25, 2015).

---

20.     Chipotle claims that that it is "all about simple, fresh food without artificial flavors or fillers," that it serves "more local produce than any restaurant company in the U.S.," that it is "serious about pasture-raised animals that have room to be animals," and that there is "no place for nontherapeutic antibiotics and synthetic hormones on the farms that produce" Chipotle's ingredients.  Chipotle's "Food with Integrity" principle purportedly led it to stop serving pork in some of its restaurants after it found that suppliers were not meeting its pork production standards.[20]

21.     Beginning in March 2013, Chipotle released a comprehensive list of all of its ingredients on its online website, which was reportedly a first among fast-food chains.[21]   When Chipotle first listed its ingredients online, 12 of the 24 ingredients listed contained the presence of GMOs, including, but not limited to, Chipotle's tortillas, rice, salad dressing, potato chips, and its meat products.[22]  Chipotle stated, however, that it was committed "to remov[ing] the GMOs from" its Food Products "to the fullest extent possible."[23]

**B.     Chipotle's April 2015 "GMO Free" Announcement**

22.     On or about April 27, 2015, Chipotle announced and began advertising that it would only prepare food with ingredients that are free of GMOs.[24]  Steve Ells, Chipotle's founder and co-chief executive, stated that, "Just because food is served fast doesn't mean it has to be made with

---

[20] Hayley Peterson, *Chipotle workers are trained to give you smaller portions of these 7 ingredients*, Business Insider (Feb. 25, 2015, 11:46 AM), http://www.businessinsider.com/chipotles-critical-seven-ingredients-2015-2.

[21] *See A "Food Babe Investigates" Win – Chipotle Posts Ingredients*, Food Babe, http://foodbabe.com/2013/03/24/a-food-babe-investigates-win-chipotle-posts-ingredients/ (last accessed Aug. 9, 2015); *see also* Joe Satran, *Chipotle Starts Labeling GMO Ingredients on Website Menu*, Huff Post Green (June 18, 2013, 1:57 PM), http://www.huffingtonpost.com/2013/06/18/chipotle-gmo_n_3460402.html; Steve Ellis, *Chipotle Is Saying No To GMOs.  Here's Why.*, Huff Post Food for Thought (Jan. 28, 2014, 8:48 AM), http://www.huffingtonpost.com/steve-ells/chipotle-gmos-no_b_4063994.html.

[22] *See* Chipotle Starts Labeling GMO Ingredients on Website Menu; A "Food Babe Investigates" Win – Chipotle Posts Ingredients.

[23] Chipotle Is Saying No To GMOs.  Here's Why.

[24] *See* Stephanie Strom, *Chipotle to Stop Using Genetically Altered Ingredients*, The New York Times (Apr. 26, 2015), http://www.nytimes.com/2015/04/27/business/chipotle-to-stop-serving-genetically-altered-food.html?_r=0; Jana Kasperkevic, *Chipotle removes all GMO ingredients from its menu*, The Guardian (Apr. 27, 2015, 12:09 PM), http://www.theguardian.com/business/2015/apr/27/chipotle-gmo-food-off-the-menu.

---

cheap raw ingredients, highly processed with preservatives and fillers and stabilizers and artificial colors and flavors."[25]

23.     Chipotle's announcement was a strategic marketing campaign to entice new health-minded consumers and retain current ones.  As Phil Lampert noted in his April 28, 2015 *Forbes'* article, "Chipotle's Non-GMO Policy Changes Everything," "Chipotle's move will no doubt attract new customers to the chain's restaurants and most likely bring in an entirely new customer base, not for the food, but because they align with the chain's ethical positions.  Some will like the food and come back for more."[26]

24.     In an April 30, 2015 article for *New York Magazine*, Jesse Singal pointed out that Chipotle would "score points" by advertising that it was "ditching" GMOs:

> Most consumers aren't going to carefully analyze the scientific consensus on a given issue – who has time for that?  Rather, they use mental shortcuts, taking cues from people and institutions they trust.  Chipotle has developed a reputation for corporate responsibility and making careful decisions about the ingredients on its menu, and Chipotle ditched GMOs — therefore, GMOs must be bad.  Chipotle scores points, science loses.[27]

25.     On billboards and in its marketing and advertising, Chipotle declared that its Food Products are made from "non-GMO ingredients."  Chipotle also took to social media, announcing to its 684,000 followers on Twitter that: "We're now making all of the food at our US restaurants with only non-GMO ingredients[]."[28]

26.     In another tweet, Chipotle noted that it was "literally dropping" the letters G, M, and O from their menu, including taking out the "O" in "Chicken Burrito," thus representing that its chicken burrito does not have any GMO ingredients—even though Chipotle knew that its meat products come from animals that consume GMO feed:

---

[25] *Id.*

[26] Phil Lempert, *Chipotle's Non-GMO Policy Changes Everything*, Forbes (Apr. 28, 2015, 3:24 PM),         http://www.forbes.com/sites/phillempert/2015/04/28/chipotles-non-gmo-policy-changes-everything/.

[27] Jesse Singal, *Chipotle Is Promoting Opportunistic Anti-Science Hysteria*, New York Magazine (Apr. 30, 2015, 1:12 PM),   http://nymag.com/scienceofus/2015/04/chipotle-is-promoting-anti-science-hysteria.html.

[28] *See* @ChipotleTweets, Chipotle, https://twitter.com/ChipotleTweets/status/592793417652039680 (last accessed Aug. 10, 2015).

---

1
2
3
4
5
6
7
8
9
10
11
12
13



14        27.    In Chipotle's "A Farewell to GMOs" billboard advertisement of a taco laced with

15  cheese, it represented that it replaced all of its ingredients "with non-GMO ingredients" and that

16  "all" of Chipotle's "food is non-GMO":

17
18
19
20



21
22
23
24
25
26
27
28

28.     In another advertisement, Defendant represented that its Food Products are "made with no-GMO ingredients":



29.     On store fronts, Chipotle advertised "A Farewell to GMOs," noting that "[w]hen it comes to our food, genetically modified ingredients don't make the cut":



30.     Indeed, Defendant advertises and represents on its in-store billboards that it uses "only non-GMO ingredients," representing to consumers that all of its ingredients, including its

meat "raised without antibiotics or added hormones" and its "pasture-raised dairy" products, do not
contain any GMOs:



31.     Defendant's nationwide advertising campaign for its Food Products has been
extensive and comprehensive throughout the Class Period.  Defendant has spent tens of millions of
dollars conveying to consumers throughout the United States its deceptive message that Chipotle's
Food Products use "only Non-GMO ingredients" and that "all" of its Food Products are "non-
GMO."

32.     As a result of Chipotle's deceptive and misleading messages and omissions about its
Food Products, conveyed directly through its marketing and advertising campaigns, it has been
able to charge consumers a significant price premium for its Food Products over other fast-food
restaurants by convincing consumers to pay for a purportedly superior product, as its advertising
and marketing misleadingly convey.

### III.    Defendant's False, Misleading and Deceptive GMO Free Claims

33.     Chipotle's false and misleading representation to consumers claiming that its Food
Products do not have GMOs, and its omissions regarding the GMOs used in certain of the meat and
dairy ingredients it uses in its Food Products, have been, and continue to be, material to consumers,

including Plaintiff and other members of the putative class, and Defendant knows that its misleading representations are material in nature. Were the presence of GMOs in food not material to consumers, Chipotle would not focus its marketing and advertising to claim that it is the first GMO-free fast-food restaurant, and Chipotle would not be able to charge customers premium prices for its purportedly "non-GMO" Food Products.

34.    However, as food writer Julie Kelly points out, "[t]he company's holier-than-thou PR move proclaiming 'Food with Integrity' struck me as the ultimate cynical marketing tactic: feign integrity while you mislead customers to believe that your food is GMO-free when it's not."[29]

35.    Defendant's advertising and marketing claims that its Food Products are made with "only Non-GMO ingredients" and that "all" of its Food Products are "non-GMO" are false, misleading, deceptive, unfair and unconscionable because Chipotle utilizes meat and dairy products from animals that consume genetically modified food, and because it serves soft drinks that contain GMOs.

36.    Among its otherwise false and misleading statements on its website, Chipotle concedes in disclaimers that some of its soft drinks contain GMOs, and that its meat and dairy supplies come from animals fed with GMO grains.[30]  Contrary to its advertising campaign and in-store signage, Chipotle's ingredient list on its website admits "there is currently not a viable supply of responsibly raised meats and dairy from animals raised without GMO feed."[31]  Of course, to the extent fast-food consumers review Chipotle's website, it is misleading because Defendant fails to label its meat and dairy products as having GMOs on its own "Ingredient Statement."  More importantly, Chipotle only discloses this information on its website because it knows its fast-food customers never need to visit Chipotle's website to buy food, and are highly unlikely to seek out

---

[29] Julie Kelly, *Why Whole Foods and Chipotle's anti-GMO campaigning has lost my business*, Genetic Literacy Project (July 6, 2015), http://www.geneticliteracyproject.org/2015/07/06/why-whole-foods-and-chipotles-anti-gmo-campaigning-has-lost-my-business/; *see also* Sarah Zhang, *Chipotle's Anti-GMO Stance Is Some Anti-Science Pandering Bullshit*, Gizmodo (Apr. 27, 2015, 3:18 PM), http://gizmodo.com/chipotles-anti-gmo-stance-is-some-pandering-bullshit-1700437048.

[30] Food With Integrity, G-M-Over It.

[31] *See Ingredient Statement*, Chipotle, http://chipotle.com/ingredient-statement (last accessed Aug. 25, 2015).

this information when simply deciding where to get lunch or dinner.  Rather, consumers are likely to rely on Chipotle's internet, mass media, and in-store advertising to choose Chipotle over its competitors because of materially false information Chipotle has promulgated into the public conscious regarding its Food Products.

37.    Noting that "Chipotle's advertising is purposefully misleading" and pointing out that Chipotle "admits as much" on its website, Julie Kelly and Jeff Stier call out Chipotle's advertising "gimmicks" in their May 1, 2015 *National Review* article, "GMO: Gimmicky Marketing Obfuscations":

> So you can eat GM-free at Chipotle as long as you don't order the pork, chicken, cheese, sour cream, tortillas, or Coke. "They conveniently ignore GMO-derived ingredients when they don't have alternatives or it doesn't serve profits," said Kevin Folta, chair of the Horticultural Sciences Department at the University of Florida. "It is corporate deception in the name of a buck and anti-GMO deception in the name of ideology."  So much for food with integrity.[32]

38.    Chipotle could use only meat and dairy products certified "Organic," which is labeled on products that come from animals *not* fed with genetically modified crops.[33]  Instead, Chipotle's in-store advertisements carefully imply that they are by stating that its meat are "raised without antibiotics or added hormones" and that its milk products are "pasture-raised."  No billboard or in-store advertisement indicates that Chipotle's Food Products have ingredients containing GMOs, even though Defendant's Food Products are necessarily made with ingredients containing GMOs since Defendant's meat and dairy products come from animals that consume GMOs.

39.    Food is considered misbranded under the Federal Food, Drug and Cosmetic Act ("FDCA") if "its labeling is false or misleading in any particular," or if it does not contain certain

---

[32] Julie Kelly and Jeff Stier, *GMO: Gimmicky Marketing Obfuscations; Perhaps Chipotle should have learned from Starbucks*, National Review (May 1, 2015, 5:30 PM), http://www.nationalreview.com/article/417801/gmo-gimmicky-marketing-obfuscations-julie-kelly-jeff-stier; *see also* Tim McDonnell, *Chipotle Says It's Getting Rid of GMOs. Here's the Problem.*, Mother Jones (Apr. 28, 2015, 4:08 PM), http://www.motherjones.com/blue-marble/2015/04/chipotle-gmos-anti-science.

[33] *See National Organic Program*, United States Department of Agriculture, http://www.ams.usda.gov/about-ams/programs-offices/national-organic-program (last accessed Aug. 25, 2015).

information on its label or labeling.  *See* 21 U.S.C. § 343.  If any representation in the labeling is misleading, the entire food is misbranded.  Because Defendant has made and continues to make misleading claims that "all" of the ingredients comprising its Food Products are "non-GMO," when the representation is false and misleading, Chipotle is in violation of the FDCA.

**IV.**   **Chipotle's Concealment**

40.   Defendant is and remains under a duty to Plaintiff and the putative class to disclose the facts, as alleged herein.  The duty to disclose the true facts arises because, as marketer and seller, Defendant is in a superior position to know the true character and quality of its Food Products and the true facts are not something that Plaintiff and putative class members could, without reasonable diligence, have discovered independently prior to purchase.

41.   The facts concealed and/or not disclosed to Plaintiff and the Class, specifically that consumers are not consuming "only non-GMO ingredients," are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or pay the same price for) a Chipotle Food Product.

42.   Defendant intentionally concealed and/or failed to disclose to consumers that not all of the ingredients Chipotle uses in its Food Products are GMO-free for the purpose of inducing Plaintiff and putative class members to act thereon.

43.   Plaintiff and the putative class members justifiably acted upon, or relied upon to their detriment, the concealed and/or non-disclosed material facts as evidenced by their purchase of Chipotle's Food Products.  Had they known of the true character and quality of the ingredients used in Chipotle's Food Products, Plaintiff and the putative class members would not have purchased (or would have paid less for) such products.

44.   As a direct and proximate cause of Chipotle's misconduct, Plaintiff and the putative class members have suffered actual damages.  Defendant's conduct has been and is malicious, wanton and/or reckless and/or shows a reckless indifference to the interests and rights of others.

**CLASS ACTION ALLEGATIONS**

45.   Plaintiff brings this nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all members of the following class (the "Class"):

All persons residing in California, during the period April 27, 2015 to the present, who purchased and/or paid for Chipotle Food Products.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest, and its current or former employees, officers, and directors; (3) counsel for Plaintiff and Defendant; and (4) legal representatives, successors, or assigns of any such excluded persons.

46.     The Class are so numerous that joinder of all members is impracticable.  Though the exact number and identities of Class members are unknown at this time, Defendant's sales as of December 31, 2014 resulted in revenues of $1.07 billion.  Moreover, Defendant has over 1,780 restaurants, with 325 restaurants in California alone.  Based on these figures, it appears that the membership of the Class is in the tens of thousands.

47.     Common questions of law and fact exist as to all Class members.  These common questions of law or fact predominate over any questions affecting only individual members of the Class.  Common questions include, but are not limited to, the following:

(a)     Whether Defendant engaged in deceptive and unfair business and trade practices alleged herein;

(b)     Whether Defendant knowingly concealed or omitted material information concerning the ingredients in its Food Products;

(c)     Whether Defendant falsely and deceptively misrepresented in its advertisements and promotional materials, and other materials, that all of its Food Products were made with "non-GMO ingredients";

(d)     Whether Defendant represented that its Food Products and their ingredients have characteristics, uses, benefits, or qualities that they do not have;

(e)     Whether the Class has been injured by virtue of Defendant's unfair and/or deceptive business practices and conduct;

(f)     Whether Class members that purchased Defendant's Food Products suffered monetary damages and, if so, what is the measure of those damages; and

(g)      Whether the Class is entitled to injunctive relief.

48.      Plaintiff's claims are typical of the claims of the respective Class she seeks to represent, in that the named Plaintiff and all members of the proposed Class has suffered similar injuries as a result of the same practices alleged herein. Plaintiff has no interests adverse to the interests of the other members of the Class.

49.      Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class actions and complex litigation as their counsel.

50.      Plaintiff and other members of the Class have suffered damages as a result of Chipotle's unlawful and wrongful conduct. Absent a class action, Chipotle will retain substantial funds received as a result of its wrongdoing, and such unlawful and improper conduct shall, in large measure, not go remedied. Absent a class action, the members of the Class will not be able to effectively litigate these claims and will suffer further losses, as Defendant will be allowed to continue such conduct with impunity and retain the proceeds of its ill-gotten gains.

51.      Plaintiff avers that the prerequisites for class action treatment apply to this action and that questions of law or fact common to the Class predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action. Plaintiff further states that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of the Class will not be difficult.

## CLAIMS FOR RELIEF

### COUNT I
**(Violation of the California Consumer Legal Remedies Act,
Cal. Civil Code §§ 1750, *et seq.*)**

52.      Plaintiff repeats and realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

53.      The California Consumer Legal Remedies Act ("CLRA"), Civil Code section 1750, *et seq.*, was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code section 1770.

54.     The CLRA applies to Defendant's actions and conduct described herein because it extends to the sale of goods or services for personal, family, or household use.

55.     At all relevant times, Plaintiff and members of the Class were "consumers" as that term is defined in Civil Code section 1761(d).

56.     The transactions from which this action arises include transactions involving the sale or lease of goods or services for personal, family, or household purposes within the meaning of Civil Code section 1761.

57.     Chipotle's practices in connection with the marketing and sale of its Food Products violate the CLRA in at least the following respects:

> (a)     In violation of section 1770(a)(5), Defendant knowingly misrepresented the character, ingredients, uses and benefits of the ingredients in its Food Products;
>
> (b)     In violation of section 1770(a)(7), Defendant represented that the ingredients in its Food Products are of a particular standard, quality or grade, which they are not; and
>
> (c)     In violation of section 1770(a)(9), Defendant knowingly advertised its Food Products with the intent not to sell the products as advertised.

58.     Chipotle represents that all of its Food Products contain "non-GMO ingredients" and omits to disclose that its Food Products necessarily contain GMO ingredients in order to convey to consumers that they are obtaining a product that provides more benefit and are safer for consumers than other restaurants which offer similar or substantially similar food products.  These representations are false and misleading in that many of the ingredients composing Chipotle's Food Products do contain GMOs.

59.     Defendant's acts and practices, undertaken in transactions intended to result and which did result in the purchase of its Food Products by consumers, violate Civil Code section 1770 and caused harm to Plaintiff and Class members who would not have purchased (or paid as much for) its Food Products had they known the truth.  The acts and practices engaged in

1    by Defendant that violate the CLRA include inducing Plaintiff and the Class to purchase (or pay

2    more for) its Food Products than they would otherwise have paid had they known the truth.

3        60.    Plaintiff was injured by purchasing (or overpaying for) Chipotle's Food Products.

4        61.    In accordance with Civil Code section 1780(a), Plaintiff and members of the Class

5    seek injunctive and equitable relief for violations of the CLRA.   In addition, after mailing

6    appropriate notice and demand in accordance with Civil Code sections 1782(a) & (d), Plaintiff will

7    subsequently amend this Class Action Complaint to also include a request for damages.  Plaintiff

8    and members of the Class request that this Court enter such orders or judgments as may be

9    necessary to restore to any person in interest any money which may have been acquired by means

10   of such unfair business practices, and for such other relief, including attorneys' fees and costs, as

11   provided in Civil Code section 1780 and the Prayer for Relief.

12                                    **COUNT II**
                            **(Violation of California False Advertising Law,**
13                          **Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

14       62.    Plaintiff repeats and realleges each and every allegation contained above, and

15   incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

16       63.    Each of the above misleading advertising practices of Chipotle set forth above

17   constitutes untrue or misleading advertising under the California False Advertising Law ("FAL"),

18   California Business & Professions Code section 17500, *et seq.*

19       64.    At all material times, Defendant's marketing materials misrepresented or omitted to

20   state that Defendant's Food Products contain ingredients that have GMOs.  Chipotle's acts and

21   practices have deceived and/or are likely to deceive members of the Class and the public.

22       65.    Defendant is disseminating marketing and advertising concerning its Food Products,

23   which by its nature is unfair, untrue, deceptive, or misleading within the meaning of California

24   Business & Professions Code section 17500, *et seq.*  Such advertisements are likely to deceive, and

25   continue to deceive, the consumer public.

26       66.    In making and disseminating the statements alleged herein, Chipotle should have

27   known its advertisements were untrue and misleading.  Plaintiff and members of the Class based

28

1   their decisions to purchase Chipotle Food Products in substantial part on Defendant's

2   misrepresentations and omitted material facts.

3         67.    Plaintiff and the Class are entitled to relief, including enjoining Defendant to cease

4   and desist from engaging in the practices described herein.

5   **COUNT III**
    **(Violation of California Unfair Competition Law,**
6   **Cal. Bus. & Prof. Code §§ 17200,** *et seq.***)**

7         68.    Plaintiff repeats and realleges each and every allegation contained above, and

8   incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

9         69.    Defendant has engaged in unfair competition within the meaning of California

10  Business & Professions Code section 17200, *et seq.*, because Defendant's conduct is unlawful,

11  misleading and unfair as herein alleged.

12        70.    Chipotle's business practices are unlawful because they violate the CLRA, FDCA,

13  and FAL.

14        71.    Chipotle's business practices are misleading because they were likely to deceive

15  consumers into believing that they are obtaining a product that provides more benefit and is safer to

16  consumers than other restaurants which offer similar or substantially similar food products.

17        72.    Defendant's business practices, and each of them, are unfair because they offend

18  established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or

19  substantially injurious to consumers, which harm greatly outweighs any benefit associated with the

20  business practice, in that Defendant omits to disclose material information about its products and,

21  as such, consumers are led to believe that the products they were paying for had qualities that it did

22  not have.

23        73.    Plaintiff has standing to pursue this claim because she has been injured by virtue of

24  suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.

25  Plaintiff would not have purchased Chipotle's Food Products (or paid as much for it) had she

26  known the truth.

27        74.    Plaintiff and the Class are entitled to relief, including full restitution and/or

28  restitutionary disgorgement, to the greatest extent permitted by law, which may have been obtained

---

1  by Defendant as a result of such business acts or practices, and enjoining Defendant to cease and

2  desist from engaging in the practices described herein.

3       75.    Chipotle's aforementioned actions and activities have been committed willfully with

4  an intent to damage Plaintiff and the Class, and have caused and will continue to cause damage and

5  irreparable harm and injury to Plaintiff and the Class unless and until such time as it is

6  preliminarily and permanently enjoined by this Court.

7  **PRAYER FOR RELIEF**

8      WHEREFORE, Plaintiff, on behalf of herself and on behalf of the Class, prays for relief as

9  follows:

10      A.    For an Order certifying this case as a class action against Chipotle and appointing

11      Plaintiff as Representative of the Class;

12      B.    Awarding monetary and actual damages and/or restitution, as appropriate;

13      C.    Awarding declaratory and injunctive relief as permitted by law or equity to assure

14      that the Class have an effective remedy, including enjoining Chipotle from

15      continuing the unlawful practices as set forth above;

16      D.    Prejudgment interest to the extent allowed by the law;

17      E.    Awarding all costs, including experts' fees and attorneys' fees, expenses and costs

18      of prosecuting this action; and

19      F.    Such other and further relief as the Court may deem just and proper.

20  **JURY TRIAL DEMAND**

21      Plaintiff demands a trial by jury on all issues so triable.

22  DATED:  August 28, 2015    **KAPLAN FOX & KILSHEIMER LLP**

23      By:  */s/ Laurence D. King*

24      Laurence D. King

25      Linda M. Fong<br>Matthew George<br>Mario M. Choi

26      350 Sansome Street, Suite 400<br>San Francisco, CA  94104

27      Telephone:  (415) 772-4700<br>Facsimile:  (415) 772-4707

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice* to be filed)
Donald R. Hall (*pro hac vice* to be filed)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Attorneys for Plaintiff COLLEEN GALLAGHER*

1   Laurence D. King (SBN 206423)
    Linda M. Fong (SBN 124232)
2   Matthew B. George (SBN 239322)
    Mario M. Choi (SBN 243409)
3   KAPLAN FOX & KILSHEIMER LLP
    350 Sansome Street, Suite 400
4   San Francisco, CA 94104
    Telephone: 415-772-4700
5   Facsimile:  415-772-4707
    Email: lking@kaplanfox.com
6        lfong@kaplanfox.com
         mgeorge@kaplanfox.com
7        mchoi@kaplanfox.com

8   *Attorneys for Plaintiff Colleen Gallagher*

9

10              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
11

12  **COLLEEN GALLAGHER**, Individually        Case No.:
    and on Behalf of All Others Similarly
13  Situated,                                  CLASS ACTION

14                      Plaintiff,             **PLAINTIFF COLLEEN GALLAGHER'S**
                                               **DECLARATION OF COMPLIANCE**
15          v.                                 **WITH CALIFORNIA CIVIL CODE**
                                               **SECTION 1780(d)**
16  **CHIPOTLE MEXICAN GRILL, INC.,**

17                      Defendant.

18

19

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF COLLEEN GALLAGHER

2    I, Colleen Gallagher, hereby declare as follows as follows:

3         1.       I am the plaintiff in the above-captioned action.

4         2.       This Declaration is being made pursuant to California Civil Code section 1780(d).

5    I make this affidavit based on personal knowledge, and if called to do so, I could testify

6    competently on the information set forth below.

7         3. ·     I am a resident of Piedmont, Alameda County, California.

8         4.       I have authorized my attorneys at Kaplan Fox & Kilsheimer LLP to investigate

9    and prosecute a proposed class action against Chipotle Mexican Grill, Inc. ("Chipotle"), on behalf

10   of myself and other purchasers of Chipotle's Food Products (as defined in the Complaint).

11        5.       During the Class Period (as defined in the Complaint), I purchased Food Products

12   at a Chipotle restaurant located in Oakland, Alameda County, California.

13        I declare under penalty of perjury that the foregoing is true and correct.

14   Executed this _____ day of August, 2015.

15

16                                                  _____

17                                                  Colleen Gallagher

18

19

20

21

22

23

24

25

26

27

28