UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEEN GALLAGHER,<br><br>  Plaintiff,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC.,<br><br>  Defendant. | Case No. 15-cv-03952-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Re: Dkt. No. 18 |

Pending before the Court is Defendant Chipotle Mexican Grill, Inc.'s motion to dismiss Plaintiff Colleen Gallagher's class action complaint. For the reasons stated below, the motion is GRANTED.

**I.    BACKGROUND**

Plaintiff filed her complaint on behalf of a nationwide class on August 28, 2015. Dkt. No. 1 ("Complt."). The following allegations are taken as true for purposes of this motion to dismiss.[1]

Defendant "owns and operates a nationwide chain of casual Mexican fast-food restaurants that sell four main menu items: burritos, burrito bowls (a burrito without the tortilla), tacos, and salads." *Id.* ¶ 2. Defendant represents that it prepares its food using "only non-GMO ingredients," *id.* ¶ 30, that "*all* of [its] food is non-GMO," *id.* ¶ 27 (emphasis in original), and that "[w]hen it comes to our food, genetically modified ingredients don't make the cut," *id.* ¶ 29 (collectively, "GMO Claims"). In the complaint, Plaintiff defines "GMO" as "any organism whose genetic material has been altered using . . . genetic engineering techniques." *Id.* ¶ 14.

---

[1] Both parties request that the Court take judicial notice of certain documents. *See* Dkt. Nos. 19, 24, 27-1. Because the Court does not rely on any of those documents in its analysis, the requests are DENIED AS MOOT.

At some time since April 27, 2015, and at an unspecified location, Plaintiff "purchased or paid for [Defendant's] food and beverage products ('Food Products')." *Id.* ¶ 1. When she purchased those unspecified food and beverage products, Plaintiff "relied on the representation that Defendant's Food Products did not contain any GMO ingredients, having seen or heard advertisements, and in-store signage, that [Defendant] used 'only non-GMO ingredients.'" *Id.* ¶ 7. However,

> [Defendant's] menu has never been at any time free of GMOs. Among other things, [Defendant] serves meat products that come from animals which feed on GMOs, including corn and soy. [Defendant's] tacos and burritos are also usually served with sour cream and cheese from dairy farms that feed animals with GMOs. And, [Defendant] also sells Coca-Cola and other soft drinks that are made with corn-syrup—a GMO.

*Id.* ¶ 5.

Plaintiff further alleges that Defendant had a duty to disclose but "intentionally concealed and/or failed to disclose" the material fact that "consumers are not consuming 'only non-GMO ingredients.'" *Id.* ¶¶ 40-42. Had Plaintiff known this concealed fact, or had she known that Defendant's GMO Claims were false and misleading, she "would not have purchased from Defendant at the price she had paid, or purchased [the Food Products] at all." *Id.* ¶ 7.

Based on these allegations, Plaintiff brings three causes of action: (1) violation of the California Consumers Legal Remedies Act ("CLRA"); (2) violation of the California False Advertising Law ("FAL"); and (3) violation of the California Unfair Competition Law ("UCL").

**II. DISCUSSION**

**A. Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

2

will not do." *Twombly*, 550 U.S. at 555. On a motion to dismiss, the court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Because Plaintiff's claims are premised on allegedly fraudulent conduct, Rule 9(b) also applies. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged." *Id.* at 1124. Claims for fraud must be based on facts "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge." *Id.* Allegations of fraud must meet both Rule 9(b)'s particularity requirement and *Iqbal*'s plausibility standard. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

### B.  Standing

#### 1.  Statutory Standing

To sufficiently plead standing under the FAL, CLRA, or UCL, a plaintiff must allege that he relied on the defendant's purported misrepresentations and suffered economic injury as a result. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011). In her complaint, Plaintiff alleges that she "purchased [Defendant's] Food Products, relying on . . . the representation that Defendant's Food Products did not contain any GMO ingredients, having seen or heard advertisements, and in-store signage, that [Defendant] used 'only non-GMO ingredients,' in deciding to continue her purchases." Complt. ¶ 7. Plaintiff further alleges that she "would not have purchased from Defendant at the price she had paid, or purchased [the products] at all, had she known that the representations made concerning Defendant's Food Products were materially false and misleading." *Id.*

The Court finds that Plaintiff has sufficiently pled reliance by alleging the specific representation made by Defendant that induced her to purchase its products (*i.e.*, that Defendant uses "only non-GMO ingredients"). However, Plaintiff has not adequately alleged any resulting

3

economic injury. Nowhere in the complaint does Plaintiff specify which of Defendant's "Food Products" she purchased. And Plaintiff does not allege that *all* of Defendant's products contain GMOs under her definition of the term—indeed, her complaint is narrowly cabined to meat, dairy, and third-party soft drinks sold by Defendant. Thus, it is not clear that Plaintiff purchased any products that, by her definition, are "made with ingredients containing GMOs." Complt. ¶ 38. If Plaintiff did not purchase any meat, dairy or third-party soft drinks from Defendant, as is possible given the facts alleged in the complaint, it is not plausible that Plaintiff's economic injury was caused by Defendant's GMO Claims, as required by *Kwikset*. 51 Cal. 4th at 326. Moreover, there are no allegations in the complaint that plausibly suggest that all of Defendant's food and beverage products—*i.e.*, both the allegedly GMO products and the concededly non-GMO products—are "substantially similar" for purposes of class representative standing in this context. *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869-71 (N.D. Cal. 2012).

As currently pled, Plaintiff's complaint does not plausibly allege that she suffered an injury-in-fact. Accordingly, all of Plaintiff's claims must be dismissed with leave to amend for failure to adequately allege standing.[2] To better guide Plaintiff should she choose to file an amended complaint, the Court analyzes some of Defendant's other arguments in support of dismissal below.

### 2. Article III Standing to Seek Injunctive Relief

To have standing to seek prospective injunctive relief under Article III of the United States Constitution, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks omitted). In false advertising cases, "where a plaintiff has no intention of purchasing the product in the future, a majority of district courts have held that the plaintiff has no standing to seek prospective injunctive relief, and some have also held that a plaintiff who is aware of allegedly misleading advertising has no standing to seek prospective injunctive relief."

---

[2] Additionally, Plaintiff's lack of specificity regarding which of Defendant's products she purchased, and when and where she purchased them, presents a potential problem under Rule 9(b). If she chooses to file an amended complaint, Plaintiff should be cognizant of the specificity requirements of Rule 9(b).

4

*Davidson v. Kimberly-Clark Corp.*, No. 14-cv-01783-PJH, 2014 WL 7247398, at *4 (N.D. Cal. Dec. 19, 2014).

Plaintiff does not allege that she intends to purchase Defendant's Food Products again in the future. Indeed, Plaintiff alleges that she "would not have purchased . . . at all[] had she known that the representations made concerning Defendant's Food Products were materially false and misleading." Complt. ¶ 7. It is entirely implausible that Plaintiff risks being harmed by Defendant's alleged misrepresentations again. *See Gershman v. Bayer HealthCare LLC*, No. 14-cv-05332-HSG, 2015 WL 2170214, at *8 (N.D. Cal. May 8, 2015). The Court therefore finds that Plaintiff has not alleged "a real and immediate threat" of future injury and does not have standing to seek injunctive relief.[3]

### C.     Allegedly False and Misleading Representations

"[T]he primary evidence in a false advertising case is the advertising itself." *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003) (internal quotation marks omitted). To that end, Plaintiff alleges that Defendant made the following specific GMO Claims: (1) it prepares its food using "only non-GMO ingredients," *id.* ¶ 30; (2) "*all* of [its] food is non-GMO," *id.* ¶ 27 (emphasis in original); and (3) "[w]hen it comes to our food, genetically modified ingredients don't make the cut," *id.* ¶ 29. In her complaint, Plaintiff defines "GMO" as "any organism whose genetic material has been altered using . . . genetic engineering techniques." *Id.* ¶ 14.

Plaintiff alleges that Defendant's GMO Claims are false or misleading for two reasons: (1) because Defendant sells meat and dairy products derived from animals that consume genetically modified food; and (2) because Defendant sells third-party soft drinks that contain GMOs in its restaurants.

"[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision" at the motion to dismiss stage. *Williams v. Gerber Prods. Co.*, 552 F.3d

---

[3] While the Court recognizes that other courts in this district have allowed claims for injunctive relief to proceed under similar circumstances based on policy reasons, the Court respectfully disagrees with those decisions because state policy objectives cannot trump the requirements of Article III. *See Delarosa v. Boiron, Inc.*, No. 10-cv-01569-JST, 2012 WL 8716658, at *3 (C.D. Cal. Dec. 28, 2012) ("To the extent that . . . other cases purport to create a public-policy exception to the standing requirement, that exception does not square with Article III's mandate.").

1   934, 938 (9th Cir. 2008). However, dismissal is appropriate where "the advertisement itself
2   ma[kes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be
3   deceived." *Id.* at 939. Accordingly, several courts in this circuit have granted motions to dismiss
4   after concluding as a matter of law that a reasonable consumer was not likely to be deceived by a
5   defendant's advertisements. *See Carrea v. Dreyer's Grand Ice Cream*, 475 F. App'x 113, 115
6   (9th Cir. 2012) (affirming district court's dismissal of complaint because "[i]t is implausible that a
7   reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to
8   imply that [the defendant's product] is more wholesome or nutritious than competing products");
9   *Balser v. Hain Celestial Grp.*, No. 13-cv-05604-MR, 2013 WL 6673617, at *1 (C.D. Cal. Dec. 18,
10  2013) (finding plaintiff's definition of the term "natural" to be "implausible as applied to the
11  products at issue" and granting motion to dismiss); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d
12  973, 978 (C.D. Cal. 2013) (finding plaintiff's allegation that defendant's claim that its pasta
13  products were "All Natural" was false or misleading to be implausible because "the reasonable
14  consumer is aware that [the pasta products] are not springing fully formed from Ravioli trees and
15  Tortellini bushes" and granting motion to dismiss) (internal quotation marks omitted).

16      As currently pled, Plaintiff's complaint may "amount to the rare situation in which
17  granting a motion to dismiss is appropriate." *Williams*, 552 F.3d at 939. Plaintiff's definition of
18  "GMO" seems inconsistent with her interpretation of Defendant's GMO Claims. Specifically,
19  Plaintiff has not alleged that any of the "ingredients" used by Defendant fit her definition of
20  "GMO"—*i.e.*, she has not alleged that they have "been altered using . . . genetic engineering
21  techniques." And there is no allegation that the animals from which Defendant's meat and dairy
22  ingredients were produced were genetically modified. Indeed, there seems to be no dispute that
23  the meat and dairy ingredients used by Defendant are not themselves genetically engineered in any
24  fashion. Rather, Plaintiff contends that the reasonable consumer would interpret "non-GMO
25  ingredients" to mean meat and dairy ingredients produced from animals that never consumed any
26  genetically modified substances. The Court questions whether the complaint, as currently pled,
27  plausibly supports such an interpretation.

28      Furthermore, Plaintiff alleges that Defendant explicitly disclosed the facts that Plaintiff

6

complains were misrepresented—that it sells soft drinks that contain GMOs and that it uses meat and dairy products derived from animals that consumed genetically modified food—on its website. Complt. ¶ 36. Arguably, because Defendant "actively defines what its use of [GMO] means, so that no reasonable consumer could be deceived." *Balser*, 2013 WL 6673617, at *1.

Finally, Plaintiff recognizes in her complaint that an entirely different term—"organic"—is used to describe non-GMO meat and dairy products sourced from animals that did not consume genetically modified feed. *See* Complt. ¶ 38 ("[Defendant] could use only meat and dairy products certified 'Organic,' which is labeled on products that come from animals *not* fed with genetically modified crops.") (emphasis in original). If Defendant were to represent that its ingredients are "organic," then, perhaps Plaintiff's claim would be more plausible. But nowhere in the complaint does Plaintiff allege that Defendant represented its ingredients as "organic," or explain why the reasonable consumer would interpret "non-GMO" to mean the same thing as "organic."

If Plaintiff chooses to file an amended complaint, she should clarify her legal and factual theory as to why a reasonable consumer would be likely to be deceived by Defendant's GMO Claims.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint is GRANTED. Plaintiff may file an amended complaint if she can in good faith plausibly and specifically allege (1) injury-in-fact, and (2) why and how Defendant's GMO Claims are false or misleading. Any amended complaint shall be filed within 21 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: February 5, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge